IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| DAVID LIGHTFOOT, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 4:12-cv-789 |
| | § | |
| TOWN OF PROSPER, KIRK MCFARLIN, | § | |
| GARY MCHONE, and AMY BOCKES, | § | |
| *Defendants.* | § | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
ON DEFENDANT'S MOTION TO DISMISS**

Pending before the Court is Defendant's Motion to Dismiss (Dkt. 17), Plaintiff's Response (Dkt. 20), and Defendant's Reply (Dkt. 21). As set forth below, the Court recommends that the motion be **GRANTED**, and Plaintiff's federal law claims be dismissed with prejudice and Plaintiff's state law claims be dismissed without prejudice.

**I. JURISDICTION AND VENUE**

Jurisdiction is proper in this court under 28 U.S.C. § 1331. Venue is proper in this court under 28 U.S.C. § 1391(b)(1)-(2).

**II. BACKGROUND**

Plaintiff David Lightfoot was a police officer in the Town of Prosper from 2002 until December 2010. Plaintiff married Defendant, Amy Bockes, in 1999. Bockes was also employed by the Town of Prosper as the administrative assistant to the Chief of Police and a clerk of the Prosper Municipal Court. Defendant McHone was Plaintiff's supervisor and Assistant Chief of Police. Defendant McFarlin was the Chief of Police.

While all of the parties were employed by the Town of Prosper, Defendant Bockes and Defendant McHone engaged in an extramarital affair. When Lightfoot learned of the affair, he went to Chief McFarlin to address it. The affair, however, continued, and the working situation

between all of the parties became increasingly strained. Lightfoot, suffering from stress and anxiety, began to have problems with his performance at work. Lightfoot alleges that McFarlin, McHone, and Bockes were conspiring to end his employment with the Prosper Police Department. Lightfoot eventually reached out to Prosper Town Manager Mike Land. Lightfoot alleges that as a result of his report to Land, a series of retaliatory events occurred including Lightfoot being placed on a performance improvement plan that was impossible for him to comply with. Lightfoot then spoke with Prosper Councilman David Vestal and Prosper Mayor Ray Smith and requested that they intervene. However, Lightfoot contends that little changed, and that the affair between McHone and Bockes continued.

In December 2010, Lightfoot and Bockes had a confrontation at the office. Following the incident, McHone and McFarlin confronted Lightfoot regarding the exchange and notified him they would be conducting a "fact-finding mission" to determine what happened. McFarlin then placed Lightfoot on "termination leave" and told him he could either resign or his employment would be terminated. McFarlin also insisted that Lightfoot sign a confidentiality agreement regarding the affair, but Lightfoot refused. Lightfoot then resigned from his position. He later obtained employment with the Northlake Police Department.

Lightfoot went on to seek a position with the McKinney Police Department. The McKinney Police Department declined to hire him. To determine why, Lightfoot requested and obtained an internal memorandum drafted by the McKinney Police Department that outlines the reasons he was not hired. Within the memorandum were allegations that although Lightfoot's application stated that he was not the subject of any lawsuits, McHone had filed a lawsuit against Lightfoot alleging defamation. Also in the memorandum was an allegation that Lightfoot had lied to Bockes about fathering a child prior to their marriage. Lightfoot had in fact fathered a

child before he married Bockes, but he contends he was not aware of the fact until after his marriage to Bockes. Both of these allegations were in a personnel file from the Prosper Police Department that was given to the McKinney Police Department. As a result of these allegations, the McKinney Police Department designated Lightfoot "dishonest." Lightfoot alleges that McHone, McFarlin, and Bockes placed false documentation in his Prosper Police Department personnel file to prevent him from obtaining employment with the McKinney Police Department.

### III. LEGAL STANDARD

In deciding a Rule 12(b)(6) motion, the court must accept all of the plaintiff's allegations as true.[1] A claim will survive an attack under Rule 12(b)(6) if it "may be supported by showing any set of facts consistent with the allegations in the complaint."[2] "Factual allegations must be enough to raise a right to relief above the speculative level."[3] In other words, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[4] Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[5] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[6] A claim may not be dismissed based solely on a court's supposition that the pleader is unlikely "to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder."[7]

---

[1] *Ballard v. Wall*, 413 F.3d 510, 514-15 (5th Cir. 2005).
[2] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007).
[3] *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (citing *Twombly*, 550 U.S. at 555).
[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).
[5] *Id*.
[6] *Id.*
[7] *Twombly*, 550 U.S. at 563 n.8.

The Supreme Court in *Iqbal* established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the court identifies conclusory allegations and proceeds to disregard them, for they are "not entitled to the assumption of truth."[8] Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief."[9] This evaluation is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[10]

## IV. ANALYSIS

### a. 42 U.S.C. § 1983; Unlawful Retaliation for Engaging in Protected Speech

Lightfoot alleges that he "voiced opposition to the hostile work environment and the offensive, discriminatory practices perpetrated by McFarlin, McHone, and Bockes by expressing his concern to McHone, McFarlin, Land, Smith, and other City Council members." Lightfoot contends that his speech was protected by the First Amendment to the Constitution. Further, Lightfoot argues that Defendants' actions (forcing him to resign and then preventing him from gaining employment with the McKinney Police Department) violate section 1983 because they retaliation for his protected speech. Plaintiff argues that his speech voicing concern over a lack of integrity among Prosper officials is a matter of public concern.

"To establish a retaliation claim, plaintiffs must prove the following elements: '(1) the plaintiff suffered an adverse employment decision, (2) the plaintiff's speech involved a matter of public concern, (3) the plaintiff's interest in speaking outweighed the governmental defendant's interest in promoting efficiency, and (4) the protected speech motivated the defendant's

---

[8] *Iqbal*, 556 U.S. at 679.
[9] *Id.* at 681.
[10] *Id.*

conduct.'"[11] Because Plaintiff cannot establish the second element of his claim, the Court does not address the remaining elements.

"Matters of public concern are those which can 'be fairly considered as relating to any matter of political, social, or other concern to the community.' "[12] But, when the content of speech "'deals with individual personnel disputes and grievances" and is "of no relevance to the public's evaluation of the performance of governmental agencies," the speech does not involve a matter of public concern.[13] To determine whether speech is about a matter of public concern, the court considers the "content, form, and context of a given statement, as revealed by the whole record."[14]

Plaintiff has not alleged any facts that would support a retaliation claim based on a violation of his First Amendment rights under 42 U.S.C. § 1983. Plaintiff's speech concerned only the personal relationships between himself, McHone, Bockes, and McFarlin. Plaintiff did not state any facts that would suggest misconduct or mismanagement within the Prosper Police Department. Plaintiff's speech did not involve "more than the fact of an employee's employment grievance."[15] Further, Plaintiff did not allege that the affair about which he complained was prohibited by any police department policies. Accordingly, Plaintiff's Section 1983 claim should be **DISMISSED WITH PREJUDICE.**

### b. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3; Texas Labor Code § 21.055

Lightfoot alleges that McFarlin, McHone, and Bockes retaliated against him for voicing opposition to "the hostile work environment and the offensive, discriminatory practices

---

[11] *Juarez v. Aguilar*, 666 F.3d 325, 332 (5th Cir. 2011).
[12] *Branton v. City of Dallas,* 272 F.3d 730, 739 (5th Cir.2001) (quoting *Connick v. Myers,* 461 U.S. 138, 147 (1983)).
[13] *Davis v. West Cmty. Hosp.,* 755 F.2d 455, 461 (5th Cir.1985).
[14] *Branton*, 272 F.3d at 739 (quoting *Connick v. Myers,* 461 U.S. 138, 147-48 (1983)).
[15] *Id*. at 740.

perpetrated by" Defendants. Lightfoot alleges that he was retaliated against by first being forced to resign and then prevented from being hired by the McKinney Police Department. Lightfoot contends that those actions constituted retaliation in violation of Title VII and the Texas Labor Code.

Title VII, 42 U.S.C. § 2000e-3(a) makes it unlawful for an employer to discriminate against an employee because the employee "has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter." Unlawful practices under this subchapter are for an employer: "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."[16] The elements of a prima facie showing of retaliation under this statute are (1) that the employee engaged in protected activity; (2) that an adverse employment action occurred; and (3) that a causal link existed between the protected activity and the adverse action.[17]

Section 21.055 of the Texas Labor Code states that "[a]n employer, labor union, or employment agency commits an unlawful employment practice if the employer, labor union, or employment agency retaliates or discriminates against a person who . . . (1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists,

---

[16] 42 U.S.C. § 2000e-2(a).
[17] *Septimus v. Univ. of Houston*, 399 F.3d 601, 610 (5th Cir. 2005).

or participates in any manner in an investigation, proceeding, or hearing." "Engaging in a protected activity requires complaining of some sort of discrimination that is covered by the TCHRA."[18]

Plaintiff has not alleged any facts that demonstrate he engaged in protected activity under either 42 U.S.C. § 2000e-3(a) or Section 21.055 of the Texas Labor Code. Plaintiff complaints all relate to his treatment as a result of the relationship between McHone and Bockes. None of the facts alleged point to any type of protected activity covered by these statutes. Therefore, Plaintiff's claims under 42 U.S.C. § 2000e-3(a) or Section 21.055 of the Texas Labor Code should be **DISMISSED WITH PREJUDICE**.

V. **RECOMMENDATION**

Defendants' motion to dismiss should be GRANTED. Plaintiff's claims under federal law should be **DISMISSED WITH PREJUDICE**. The only remaining claims will be Plaintiff's state law claims for defamation and intentional infliction of emotional distress. Because there is no further question of federal law, this court should decline to exercise jurisdiction over the remaining state law claims.[19] Plaintiff's state law claims of intentional infliction of emotional distress and defamation should be **DISMISSED WITHOUT PREJUDICE** to re-filing in state court.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de*

---

[18] *Spinks v. Truegreen Landcare, L.L.C.*, 322 F. Supp. 2d 784, 796 (S.D. Tex. June 14, 2004).
[19] *Parker & Parsley Petroleum Co. v. Dressler Indus.*, 972 F.2d 580, 585 (5th Cir. 1992).

*novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice.[20]

**SIGNED this 8th day of August, 2013.**

                                             DON D. BUSH
                                             UNITED STATES MAGISTRATE JUDGE

---

[20] *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).